IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| ROBERT L. & RUTH H. HECKLER | § § | CASE NO. 13-10255-cag |
| Debtors | § § § | CHAPTER 7 |
| PLITT INTERNATIONAL, LLC, WEST END LIGHTING, LLC, ROBERT WEBER & JEFFERY PLITT | § § § § | |
| Plaintiffs | § § | ADV. # _____ |
| v. | § § | |
| ROBERT L. HECKLER & RUTH HELEN HECKLER | § § § | |
| Defendant | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. §§ 523(a)(2) AND (a)(4)

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

**COMES NOW, Jeffrey Plitt, Plitt International, LLC and West End Lighting, LLC (collectively "Plaintiffs") and Robert Weber ("Weber")**, creditors and parties in interest in the above styled and numbered bankruptcy case and the plaintiffs in the above captioned and numbered adversary proceeding to complain of Robert Heckler and Ruth Helen Heckler would respectfully show the Court as follows.

### JURISDICTION AND VENUE

1

1. This Adversary arises pursuant to 11 U.S.C. §§ 1328, 523 and 727 as well as Rule 7001 of the Federal Rules of Bankruptcy Procedure, specifically, 7001(6) and (9). The Court has jurisdiction over this Adversary pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (I) and (O) and is a non-core proceeding arising in or related to this Bankruptcy Case with respect to pendent state law causes of action pled herein over which the Court has jurisdiction pursuant to 28 U.S.C. § 1409(a).

2. This Adversary arises in and relates to this Bankruptcy Case now pending before the Court. Venue is proper pursuant to 28 U.S.C. § 1409(a).

**PARTIES**

3. Plaintiff Plitt International, LLC ("Plitt") is a Wisconsin limited liability company with a principal place of business in Brillion, Wisconsin. Plitt brings these claims both individually and on behalf of West End Lighting, LLC ("WEL"), pursuant to section 101.463 of the Texas Business Organizations Code. Plitt is and was at all relevant times a member and 50% owner of WEL Jeffrey Plitt is an individual residing in Brillion, Wisconsin. WEL is a Texas limited liability company registered as a foreign entity authorized to do business in Wisconsin with a principal place of business in Brillion, Wisconsin. Robert Weber is an individual who resides in Nazareth, PA.

4. Defendants Robert Heckler and Ruth Helen Heckler are individuals who reside in the State of Texas, and are debtors in this court, and may be served with process at 4700 Norman Trail, Austin, Texas 78749 by United States mail, first class, postage prepaid, pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure. A courtesy copy of this complaint will be served upon Debtors' current attorney of record, Michael Baumer, Law Office of Michael Baumer, 7600 Burnet Road, Suite 530, Austin, Texas.

2

## THE PLAYERS AND THEIR RELATIONSHIPS

5.  Plaintiff WEL is an LED lighting company owned 50% by Cedrela Consulting, Inc. ("Cedrela")[1] and 50% by Plitt. Debtors Ruth Heckler and Rob Heckler own Cedrela, and Jeffrey Plitt owns Plitt. Rob Heckler and Jeffrey Plitt had a personal friendship that pre-dated their formation of WEL. From WEL's organization until August 27, 2012, WEL was managed by Rob Heckler and Jeffrey Plitt, pursuant to an Operating Agreement. The Operating Agreement provides that WEL is a manager-managed LLC, with a member-elected Managing Board. No action can be taken without the unanimous vote of the Managing Board. From WEL's formation until Rob Heckler's resignation on August 27, 2012, the Managing Board consisted of Jeffrey Plitt and Rob Heckler, so both men's consent was required for any significant act to be taken by WEL. When WEL was formed in 2009, Cedrela, Rob Heckler, Jeffrey Plitt and Plitt borrowed money from Weber ("the Weber Loan") to fund WEL's operations. Specifically, Rob Heckler personally guaranteed such debt, the outstanding balance on which is approximately $348,000.00.

6.  <u>Operation and management of WEL.</u> When they agreed to form WEL, Rob Heckler and Jeffrey Plitt each committed to spending the majority of their professional time working on behalf of WEL, with Rob Heckler overseeing the sales, financials and daily operations, and Jeffrey Plitt overseeing international sourcing and procurement of initial financing. Because of Jeffrey Plitt's frequent trips to China for WEL sourcing, and the nature of Rob Heckler's duties, the managers agreed that WEL's product (including samples and inventory), finances and records would be kept in Texas with Rob Heckler.

---

[1] Cedrela is a Chapter 7 Debtor in this court. It is not a party to this adversary proceeding.

3

7. In November of 2010, Rob Heckler (with Jeffrey Plitt's acquiescence) took a partial leave of absence for three months to enable him to take a short-term consulting job. During those three months, Rob Heckler continued his duties with WEL, albeit on a more limited basis, and WEL continued to grow. In August of 2011, Rob Heckler again requested a partial leave of absence purportedly to take another three month consulting job. Jeffrey Plitt acquiesced, but this time Rob Heckler did not continue his duties and work to ensure WEL's continued growth as he had during his earlier partial leave. WEL began to suffer as a result of Rob Heckler's neglect.

8. Beginning in August of 2011, Rob Heckler refused to actively engage in WEL sales, and failed to timely respond to customer and salesmen communications. Even worse, Rob Heckler began telling prospective clients and salespeople that he intended to leave or shut down WEL. Particularly for a young company such as WEL, these types of communications to those in the industry were harmful to WEL's growth potential. Plitt and Jeffrey Plitt were not aware of these acts and omissions by Rob Heckler until nearly a year later after the damage had been done.

9. Rob Heckler wants out of WEL. Finally, in January of 2012, Rob Heckler informed Jeffrey Plitt of his desire to leave WEL and sell Cedrela's interest in the company to Plitt. He and Jeffrey Plitt then entered into negotiations for the terms of Rob Heckler's withdrawal from WEL and the sale of Cedrela's ownership interest in WEL. In those negotiations, Rob Heckler undertook a strategy to try to force his removal as a guarantor on the Weber Loan, through effectively holding WEL's business and its inventory, sales efforts, books and records hostage. During these negotiations Rob Heckler's wrongful actions included the following: a) threatening to simply shut down WEL if his novation demands were not met and

4

b) refusing to provide Plitt access to WEL's banking information, products, phone numbers, website access, accounts receivable, accounts payable, warranty claim information, and customer contact information until his demands were met. In addition, until Rob Heckler's resignation from WEL's Managing Board on August 27, 2012, he refused to take or cooperate in any action that would preserve or enhance WEL's business. Because of the Company Agreement requirement that all significant actions be done by unanimous consent, such refusal by Rob Heckler effectively crippled the company's operations.

10. Specific examples of such refusals to approve company actions include Rob Heckler withholding of his approval for requests that would be of obvious benefit to WEL, including requests to accept new orders, stock inventory, take on new salespersons, and send product and finances to Jeffrey Plitt to enable him to carry on WEL's business. Even more damaging was Rob Heckler's refusal to allow the company to make any debt service on the Weber loan, though the company had the resources at that time to do so, thus causing the loan to go into default. All of these actions were taken in the context of attempting to put pressure on Plitt to agree to take over the Weber debt, and cause Rob Heckler to be released, as part of the sale of Cedrela's interest in WEL. Due to Rob Heckler's failure to allow even interest-only payments on the Weber loan for nearly 6 months, Robert Weber became unwilling to advance the additional previously committed money needed to fund the operations of WEL, and WEL's business began to collapse.

11. <u>Evidence of misappropriation of funds and property emerges</u>. During the negotiations that took place in early to mid-2012 Plaintiffs were puzzled and troubled by the Hecklers refusal to provide them access to the company books and records, or in fact any substantive information about the operation of the company. Finally, in March 2012 the

Hecklers filed suit against Plaintiffs to have a receiver appointed for WEL, and continued their attempts to negotiate a favorable sale of their interest in the company to Plitt. It was only through discovery obtained in that lawsuit the Plaintiffs learned that Rob Heckler had failed to follow company protocol, misappropriated company funds, misdirected company property and then covered up his activities in an attempt to make sure that Plaintiffs did not learn of the wrongful actions. Examples of the misdirection and misappropriation of WEL funds uncovered during discovery include the following:

- In December of 2009, the Hecklers agreed to assist their friend Andrew James financially, and caused Cedrela to give to him $12,000.00. Rob Heckler then arranged to have WEL reimburse Cedrela the $12,000.00, but never disclosed this transaction to Plaintiffs. Between January of 2010 and August of 2011, Rob Heckler changed this transaction in WEL's books at least 8 times, discussing with Ruth Heckler his concern that this transaction was improper. In August or September of 2011, Rob Heckler caused WEL to pay $12,000.00 to Cedrela, attempting to conceal the transaction by back-dating WEL checks to Cedrela to January 1, 2011 and combining portions of the $12,000.00 with other monies allegedly due to Cedrela. Rob Heckler then caused WEL to falsely report this $12,000 payment as a commission expense for tax year 2011.

- In 2010 and 2011, the Hecklers caused WEL to reimburse themselves for personal expenses, including expenses incurred by them on a family vacation. Requests for payment were submitted to WEL by Ruth Heckler, Cedrela or Rob Heckler, and Rob Heckler issued WEL checks to cover the supposed reimbursements. Rob Heckler caused WEL to falsely report these personal expenses as WEL expenses for tax year 2011.

- In 2011, the Hecklers caused WEL to pay the expenses of another business entity in which Cedrela (and therefore indirectly the Hecklers) had an ownership interest. Rob Heckler caused WEL to falsely report these expenses as WEL expenses for tax year 2011.

- In 2011, the Hecklers agreed to again assist their friend Andrew James, this time by adding him to Cedrela's health insurance program, and then causing WEL to reimburse Cedrela for the associated cost. Rob Heckler then caused WEL to falsely report these as WEL expenses for tax year 2011.

- Since WEL's formation, Jeffrey Plitt and Rob Heckler had agreed that warranty claims would be addressed once the allegedly defective product was returned to WEL, as the manufacturer would not honor its warranty to WEL unless the defective product was available to be returned to it. Rob Heckler caused WEL to sustain approximately

6

$45,000 in losses by refunding or replacing allegedly defective product without requiring the customer to return the allegedly defective item(s).

- Since WEL's formation, individuals and entities selling on behalf of WEL had been provided with WEL product to display and demonstrate to prospective customers ("samples"). Rob Heckler admitted during discovery in the state court suit that these samples are still under his control as he has merely lent them out and can retrieve them at any time, yet falsely reported them as expenses on WEL's 2010 and 2011 tax returns. Rob Heckler refused to provide specific information or cooperation in retrieving the samples, unless his novation demands were met.

12. <u>Fraudulent transfers made by the Hecklers within one (1) year of their bankruptcy filing.</u> In March 2012 the Debtors transferred $78,000 into trusts, purportedly for the benefit of their three minor children. These transfers were made within the year prior to their bankruptcy filing, and during the very same month in which the litigation between the Hecklers and Plaintiffs was initiated. As of the time the transfers were made, the Hecklers knew that they already were or would be in litigation with Plaintiffs, and that the Weber loan was in default. It is clear from even the very limited testimony provided by the Debtors at their 341 meeting that although they formally transferred $76,000 into trusts, they viewed that money as available for their use if they needed it. It is even more clear that such transfers were made for no other reason than to try to place those funds beyond the reach of creditors in general, and in particular Plaintiffs and Weber.

## CAUSES OF ACTION

**11 U.S.C. 523(a)(4)**

13. Plaintiffs restate the allegations contained in the foregoing paragraphs as if fully set forth herein.

14. Rob Heckler, as the managing member of WEL, was acting in a fiduciary capacity as to Plitt and WEL. Rob Heckler, as a result of his prior personal relationship with

7

Jeffrey Plitt, was acting in a fiduciary capacity as to Jeffry Plitt in his dealings on behalf of WEL. While acting in such fiduciary capacity, Rob Heckler committed fraud, defalcation, or both. He used WEL to fund his own interests and those of his friends and affiliates, to the direct detriment of his duties to Plaintiffs. Plaintiffs are entitled to: (i) a judgment in an amount which they prove they have been damaged by this fraud or defalcation and (ii) have that judgment declared non-dischargeable pursuant to 11 U.S.C. 523(a)(4). In this connection, Plaintiffs request a declaration of the Court pursuant to 28 U.S.C. §§ 2201-02, the Federal Declaratory Judgment Act, as well as Rule 7001 of the Federal Rules of Bankruptcy Procedure, subsections (2) and (9) more specifically.

## 11 U.S.C. 523(a)(6)

15. Plaintiffs restate the allegations contained in the foregoing paragraphs as if fully set forth herein.

16. Rob Heckler, while acting as a manager of WEL, acted willfully and maliciously and Plaintiffs were damaged as a result. He intentionally or recklessly harmed the business interests of WEL for the sole purpose of gaining a negotiation advantage for himself, and further intentionally or recklessly damaged WEL in order to benefit himself or his interests. Plaintiffs are entitled to: (i) a judgment in an amount which they prove they have been damaged by this willful and malicious conduct and (ii) have that judgment declared non-dischargeable pursuant to 11 U.S.C. 523(a)(6). In this connection, Plaintiffs request a declaration of the Court pursuant to 28 U.S.C. §§ 2201-02, the Federal Declaratory Judgment Act, as well as Rule 7001 of the Federal Rules of Bankruptcy Procedure, subsections (2) and (9) more specifically.

17. As a direct and proximate result of Rob Heckler's conduct complained of herein, Plaintiffs are entitled to damages under applicable federal and state law. By and through this

Adversary, Plaintiffs seek the following: (a) all direct and consequential damages suffered by Plaintiffs as a result of Rob Heckler's conduct; (b) statutory damages, if any; (d) attorneys' fees; (e) costs of Court; (f) pre-judgment interest; and (g) post-judgment interest.

### 11 U.S.C. 727(a)(2)(A)

18. Rob Heckler and Ruth Heckler, with the intent to hinder, delay or defraud his creditors, including Plaintiffs and Weber, transferred property belonging to them within one (1) year of their filing for bankruptcy. Accordingly, the Debtors are not entitled to a discharge of their debts in this proceeding pursuant to 11 U.S.C. 727(a)(2)(A).

**WHEREFORE,** Plaintiffs respectfully pray that they recover judgment against Rob Heckler for actual damages, statutory damages, pre-judgment and post-judgment interest, attorneys' fees, and costs of court and that the Court enter a judgment declaring that such amounts are excepted from Rob Heckler's discharge pursuant to 22 U.S.C. § 523(a)(6); § 523(a)(4), or both. In addition, or in the alternative, Plaintiffs and Weber pray that the Court deny both Debtors a discharge pursuant to 11 U.S.C. 727(a)(2)(A). Plaintiffs and Weber further pray for such other relief to which they may show themselves justly entitled.

Respectfully submitted,

Almanza, Blackburn & Dickie, LLP
2301 S. Capital of Texas Hwy, Bldg. H
Austin, Texas 78746
(512) 474-9486
(512) 478-7151 (Fax)

By: _____

Molly J. Mitchell
State Bar No. 14217815

**ATTORNEYS FOR PLAINTIFFS**

9

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the foregoing instrument was duly served upon the Defendants/Debtors by regular mail, postage prepaid and certified mail, with a copy to their counsel of record in this his bankruptcy, Michael Baumer, sent by fax, on this 3rd day of May, 2013.

_____
Molly J. Mitchell

FORM 104 (10/06)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

PLAINTIFFS Plitt Int, LLC, West End Lynting, LLC, Robert Weber & Jeffery Plitt

DEFENDANTS Robert L. Heckler, Ruth Helen Heckler

ATTORNEYS (Firm Name, Address, and Telephone No.)
Molly Mitchell, Almanza, Blackburn & Dickie, LLP, 2301 S. Cap. of TX. Hwy, Bldg H, Austin 78746  512-474-9486

ATTORNEYS (If Known)
Michael Baumer, 7600 Burnet Road, Suite 530, Austin 78757

PARTY (Check One Box Only)
☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin
☒ Creditor  ☐ Other
☐ Trustee

PARTY (Check One Box Only)
☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor  ☐ Other
☐ Trustee

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
§523 and §727 dischargeability and discharge objection

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

FRBP 7001(1) – Recovery of Money/Property
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

FRBP 7001(2) – Validity, Priority or Extent of Lien
☐ 21-Validity, priority or extent of lien or other interest in property

FRBP 7001(3) – Approval of Sale of Property
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

FRBP 7001(4) – Objection/Revocation of Discharge
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

FRBP 7001(5) – Revocation of Confirmation
☐ 51-Revocation of confirmation

FRBP 7001(6) – Dischargeability
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

FRBP 7001(6) – Dischargeability (continued)
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

FRBP 7001(7) – Injunctive Relief
☐ 71-Injunctive relief – reinstatement of stay
☐ 72-Injunctive relief – other

FRBP 7001(8) Subordination of Claim or Interest
☐ 81-Subordination of claim or interest

FRBP 7001(9) Declaratory Judgment
☐ 91-Declaratory judgment

FRBP 7001(10) Determination of Removed Action
☐ 01-Determination of removed claim or cause

Other
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

FORM 104 (10/06), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR Robert & Ruth Heckler | | | BANKRUPTCY CASE NO. 13-10255 |
| DISTRICT IN WHICH CASE IS PENDING Western | | DIVISIONAL OFFICE Austin | NAME OF JUDGE Gargotta |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) *[signature]* | | | |
| DATE 5-3-13 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) Molly Mitchell | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

B 250A
(8/96)

# United States Bankruptcy Court

__Western__ District Of __Texas__

In re __Robert L. & Ruth H. Heckler__
Debtor

__Plitt Int'l, LLC, Jeffrey Plitt, West
End Lighting, LLC & Robert Weber__
Plaintiff

v.

__Robert L. Heckler & Ruth H. Heckler__
Defendant

Case No. __13-10255-cag__

Chapter __7__

Adv. Proc. No. _____

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

Address of Clerk
__903 San Jacinto Blvd. Ste. 322
Austin, Texas 78701__

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

Name and Address of Plaintiff's Attorney
__Michael Baumer, Law Office of Michael Baumer
7600 Burnet Road, Suite 530
Austin TX, 78757__

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

_____
Clerk of the Bankruptcy Court

_____  By _____
Date                          Deputy Clerk

# CERTIFICATE OF SERVICE

I, _____, certify that I am, and at all times during the
(name)
service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of this summons and a copy of the complaint was made _____ by:
(date)

☑ Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

4700 Norman Trail
Austn TX 78749

☐ Personal Service: By leaving the process with defendant or with an officer or agent of defendant at:

☐ Residence Service: By leaving the process with the following adult at:

☐ Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

☐ Publication: The defendant was served as follows: [Describe briefly]

☐ State Law: The defendant was served pursuant to the laws of the State of _____,
as follows: [Describe briefly]                                                                 (name of state)

Under penalty of perjury, I declare that the foregoing is true and correct.

_____          _____
Date                              Signature

| Print Name | Molly Mitchell Almanza, Blackburn Dicki LLP |
| Business Address | 2301 S. Cap. of TX. Hwy, Bldg. H |
| City Austin | State TX  Zip 78746 |